# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

FREEDOM WATCH, INC.,

                Plaintiff,

      v.

AMAZON WEB SERVICES, INC., APPLE INC., and GOOGLE LLC,

                Defendants.

Case No. 9:21-cv-80515-DMM

 

## DEFENDANT APPLE'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Alec Schultz (FL Bar 35022)
HILGERS GRABEN
1221 Brickell Avenue
Miami, FL 33131

Kali Bracey (DC Bar 458965)*
Joshua Riley (DC Bar 1026900)*
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001

*Attorneys for Apple*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 5

I.      Freedom Watch Lacks Standing. ......................................................................... 5

        A.     Access to Parler Users ............................................................................ 6

        B.     Supracompetitive Prices for Advertising ................................................ 8

II.     Freedom Watch Fails to State a Claim Against Apple for Intentional Interference with a Business Relationship or a Contract. .................................... 9

        A.     Existence of a Business Relationship or Contract .................................. 10

                1.     Contract.................................................................................... 10

                2.     Business Relationship .............................................................. 11

        B.     Apple's Knowledge of the Relationship or Contract ............................. 13

        C.     Intentional and Unjustified Interference ................................................ 13

        D.     Damages.................................................................................................. 15

III.    Apple Is Immune from Suit Under Section 230 of the Communications Decency Act.................................................................................................................... 16

IV.    Alternatively, Freedom Watch's Complaint Should Be Dismissed on Forum Non Conveniens Grounds.......................................................................................... 19

CONCLUSION............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apex Toxicology, LLC v. United Healthcare Services, Inc.*, Case No. 17-61840-CIV, 2020 WL 2932953 (S.D. Fla. May 14, 2020) ...................................................19

*Armstrong Bank v. Shraiberg, Landau & Page, P.A (In re Tuscany Energy, LLC)*, 581 B.R. 681 (Bankr. S.D. Fla. 2018).............................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3, 9

*Astro Tel, Inc. v. Verizon Florida, LLC*, 979 F. Supp. 2d 1284 (M.D. Fla. 2013) .......................14

*Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013) ...........................................................19

*Burt Co. v. Clarendon National Insurance Co.*, 385 F. App'x 892 (11th Cir. 2010)....................5

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) ..........................................9

*Corbett v. Transportation Security Administration*, 930 F.3d 1225 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 900 (2020)...............................................5, 6

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366 (S.D. Fla. 2015) ...............................6

*Davis v. Federal Election Commission*, 554 U.S. 724 (2008)........................................6

*Domen v. Vimeo, Inc.*, No. 20-616, --- F.3d ----, 2021 WL 922749 (2d Cir. Mar. 11, 2021) ...........................................................................18

*Dowbenko v. Google Inc.*, 582 F. App'x 801 (11th Cir. 2014) ......................................16

*Duty Free Americas, Inc. v. Estee Lauder Companies*, 797 F.3d 1248 (11th Cir. 2015) ............14

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994)...........................11

*e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla. 2016) ...............16

*Hisey v. Qualtek USA, LLC*, 753 F. App'x 698 (11th Cir. 2018) ..............................19, 20

*Illoominate Media, Inc. v. CAIR Florida, Inc.*, No. 19-14741, --- F. App'x ----, 2020 WL 7703141 (11th Cir. Dec. 29, 2020)...............................9, 10, 11, 12, 15

*Jordan v. Miami-Dade County*, 439 F. Supp. 2d 1237 (S.D. Fla. 2006) .............................3

*LaCroix v. Lee County*, 819 F. App'x 839 (11th Cir. 2020).........................................6

*Mariscotti v. Merco Group at Akoya, Inc.*, 917 So. 2d 890 (Fla. 3d DCA 2005)..........................10

*Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019) ................................................................................................................................16

*McCurdy v. Collis*, 508 So. 2d 380 (Fla. 1st DCA 1987) ..........................................15

*Metzler v. Bear Automotive Service Equipment Co.*, 19 F. Supp. 2d 1345 (S.D. Fla. 1998) ...............................................................................................................14

*Moog Marketing, Inc. v. TD Bank, National Ass'n*, Case No: 6:18-cv-1765, 2019 WL 2492772 (M.D. Fla. Feb. 5, 2019) .................................................................3

*Ohio State Troopers Ass'n v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207 (S.D. Fla. 2018)................................................................................................7

*Pilkington v. United Airlines, Inc.*, 921 F. Supp. 740 (M.D. Fla. 1996), *aff'd*, 112 F.3d 1532 (11th Cir. 1997) ..............................................................................10

*Potter v. Potnetwork Holdings, Inc.*, No. 19-24017-Civ, 2020 WL 1516518 (S.D. Fla. Mar. 30, 2020) ............................................................................................6, 7

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) ..................................9

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311 (M.D. Fla. 2015) ................................................................................................................16

*Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................................................................................15

*Security Title Guarantee Corp. of Baltimore v. McDill Columbus Corp.*, 543 So. 2d 852 (Fla. 2d DCA 1989) ....................................................................13, 14

*Smith v. Ocean State Bank*, 335 So. 2d 641 (Fla. 1st DCA 1976)................................10

*Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021) .......................9

**Statutes**

47 U.S.C. § 230(c)(2)................................................................................................16

47 U.S.C. § 230(c)(2)(A) ..........................................................................................17

47 U.S.C. § 230(f)(2)................................................................................................16

47 U.S.C. § 230(f)(4)................................................................................................16

**Other Authorities**

Grace Dean, *Parler's CEO John Matze Is 'Confident' the Controversial Social-Media Platform Will Fully Return By the End of January, After Amazon Booted It Offline*, Bus. Insider (Jan. 18, 2021) ..........................................................................4

Lucas Matney, *Parler Removed From Google Play Store as Apple App Store Suspension Reportedly Looms*, TechCrunch (Jan. 8, 2021).......................................................3

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Apple Inc. ("Apple"), by and through its undersigned counsel, hereby moves to dismiss the Fifth and Sixth Causes of Action of Plaintiff Freedom Watch, Inc.'s ("Freedom Watch") First Amended Complaint ("FAC" or "Complaint").

## INTRODUCTION

Apple requires that apps in the App Store have (and implement) policies to remove objectionable content, including posts that incite violence.  In the days following the January 6, 2021, riots at the U.S. Capitol, Apple removed the Parler app from the App Store because the Parler app refused to comply with those requirements.  Freedom Watch thereafter sued Apple for tortious interference with contracts and business relationships, alleging that Apple had denied Freedom Watch access to and communication with existing and potential Parler users.  Freedom Watch's claims against Apple should be dismissed.

As a threshold matter, Freedom Watch lacks standing because it has failed to allege a cognizable injury.  Freedom Watch does not allege that it ever used Apple's App Store, and Freedom Watch cannot claim to have been injured by products or services that it does not claim to have used.  Regardless of the product or service Freedom Watch used to access Parler, Freedom Watch does not (and could not) allege that Apple has foreclosed Freedom Watch's ability to access Parler through the Internet, including via the browser on any smartphone, simply by going to Parler's website or through various other distribution channels.  Freedom Watch even concedes that users who downloaded the Parler app before January 9 still have access to that app—though Freedom Watch declines to say whether, much less when or from where, it downloaded the Parler app.  Having failed to allege that it used the App Store or that Apple rendered it unable to access

1

Parler (whether through the Internet or through an app downloaded before January 9 or otherwise), Freedom Watch has failed to allege a cognizable injury for standing purposes.

Standing issues aside, the Complaint is defective in several respects on the merits. Freedom Watch does not identify any particular business relationship or contract to which it was a party and with which Apple is alleged to have interfered, thereby defeating its intentional interference claims out of the gate.  As best one can tell, Freedom Watch's claims appear to be predicated on Freedom Watch's purported relationships with other Parler users, but those claims are foreclosed by the Eleventh Circuit's recent decision in *Illoominate Media, Inc. v. CAIR Florida, Inc*., in which the court held that one cannot sustain an intentional interference claim based on one's relationship with one's social media followers.

Nor does Freedom Watch allege any facts showing that Apple had requisite knowledge of whatever unspecified business relationship or contract is supposed to be the basis of Freedom Watch's Complaint.  And even if Freedom Watch had identified an actionable business relationship or contract (which it did not do), and even if Freedom Watch had sufficiently alleged that Apple had knowledge of it (which it did not do), Freedom Watch nonetheless acknowledges that Apple had the right to remove the Parler app from the App Store based on the conditions applicable to apps in the App Store, and the law is clear that one cannot be held liable for tortious interference where one has a right to take the actions at issue.

In addition to all of the foregoing, Apple is immune from suit here under Section 230 of the Communications Decency Act, which states that an interactive computer service provider (like Apple) cannot be held liable for the good faith actions it takes to restrict access to or the availability of violent or otherwise objectionable content.

## BACKGROUND[1]

Apple sells consumer electronics, like the iPhone, which includes the App Store, from which customers can download a variety of software programs, called applications (or "apps"). *See* FAC ¶ 8. As a condition of being available for distribution through the App Store, Apple requires apps to have policies and procedures for the removal of objectionable user-generated content, such as posts that incite violence. *See id.* ¶ 10; *see also id.* ¶ 32.

Parler is "a microblogging and social networking platform" that allows "users to post messages and interact online in real time." *Id.* ¶ 15. (Parler is like Twitter in that "both provide a similar platform for users to communicate with short messages, links, and pictures." *Id.* ¶ 18.) Parler has made its app available to users through the App Store. *See id.* ¶¶ 9, 20. However, in the days following the January 6, 2021, breach of the U.S. Capitol, Apple removed the Parler app from the App Store because of issues with Parler's process for removing objectionable and dangerous content from the app. *See id.* ¶¶ 31-32; *see also id.* ¶ 10.

As explained in one of the articles that Freedom Watch cites in the Complaint,[2] Parler "garnered attention [during the week of January 4, 2021] after posts surfaced detailing threats of violence and planning around [the] chaotic Capitol building riots which led to the deaths of 5 people including a Capitol police officer."[3] As another article cited in the Complaint explains: "In

---

[1] As required at this stage, this background takes as true the Complaint's allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court may consider documents directly referred to in the Complaint. *See Jordan v. Miami-Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006); *Moog Mktg., Inc. v. TD Bank, Nat'l Ass'n*, Case No: 6:18-cv-1765, 2019 WL 2492772, at *1 (M.D. Fla. Feb. 5, 2019) (citing *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006)).

[3] Lucas Matney, *Parler Removed From Google Play Store as Apple App Store Suspension Reportedly Looms*, TechCrunch (Jan. 8, 2021) (cited at FAC ¶ 29).

the days after the Capitol siege on January 6, [Parler] became a haven for far-right activity and misinformation because of its lax stance on moderating content. Some users called for further violence."[4]

Although Apple removed the Parler app from the App Store, Apple did not terminate access to the Parler app for users who had already downloaded it; that is, if a customer downloaded the Parler app before January 9, the customer retained access to the Parler app even after the app was removed from the App Store.  *See* FAC ¶ 33.  Nor does Freedom Watch allege that Apple somehow blocked users from accessing Parler via the Internet or through other distribution channels.  All Freedom Watch alleges is that Apple removed the Parler app from the App Store so that it could not be downloaded effective January 9.  *See id.* ¶¶ 31-32.

Freedom Watch is "a non-profit political interest group dedicated to preserving American freedom by," among other things, "preserving our national sovereignty against the terrorist state-controlled United Nations and socialistic, globalist interests." *Id.* ¶ 4.  Freedom Watch alleges that it is one of approximately 12 million Parler users, *id.* ¶¶ 91, 100, though Freedom Watch states that it does not know how many followers it has on Parler, *id.* ¶ 35.  Freedom Watch does not allege whether it accesses Parler through an app downloaded from the App Store to an Apple device, through an app on a non-Apple device, through a web browser, and/or otherwise.

On January 19, 2021, Freedom Watch sued Apple in Florida state court, asserting claims against Apple for intentional interference with contracts and business relationships.  *See id.* ¶¶ 89-105.[5]  Freedom Watch alleges that "Parler had a business relationship with more than 12 million

---

[4] Grace Dean, *Parler's CEO John Matze Is 'Confident' the Controversial Social-Media Platform Will Fully Return By the End of January, After Amazon Booted It Offline*, Bus. Insider (Jan. 18, 2021) (cited at FAC ¶ 26).

[5]  Freedom Watch also asserts claims against Defendants Amazon Web Services and Google.

users," *id*. ¶ 91, and "had more than 12 million users under contract," *id*. ¶ 100—though Freedom Watch does not identify any contract or business relationship to which Freedom Watch was a party, saying only that Freedom Watch had an unknown number of followers on the Parler platform, *see id*. ¶ 35.  Freedom Watch alleges that Apple's decision to remove the Parler app from the App Store has harmed Freedom Watch's "access to and ability to communicate with new existing and potential new PARLER users."  *Id*. ¶ 94.

On March 8, 2021, the case was removed to this Court.  *See* Dkt. 1.  On March 20, 2021, Freedom Watch filed its First Amended Complaint.  *See* Dkt. 19.[6]  Apple now files this Motion and respectfully requests that the Court dismiss the claims against it.

## ARGUMENT

### I.      Freedom Watch Lacks Standing.

The Complaint should be dismissed under Rule 12(b)(1) because Freedom Watch lacks Article III standing to pursue its claims against Apple.  "[S]tanding is a threshold question that must be explored at the outset of any case."  *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 900 (2020).  To satisfy the standing requirement, a plaintiff must allege that (1) it has "suffered an 'injury in fact'—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) there is a "causal connection between that injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) it is

---

[6]  In its First Amended Complaint, Freedom Watch changed its prayer for relief to remove a claim for punitive damages, *compare* Dkt. 1 *with* Dkt. 19, and Freedom Watch thereafter filed a motion to remand the case to state court, *see* Dkt. 20.  That motion should be denied for reasons set forth in responsive briefing to be filed shortly.

"likely, not merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted); *accord LaCroix v. Lee Cnty.*, 819 F. App'x 839, 841 (11th Cir. 2020).

Here, Freedom Watch has identified two purported injuries—foreclosed access to Parler users and "supracompetitive prices for advertising" on social media networks—that it allegedly has suffered because of Apple's decision to remove the Parler app from the App Store; however, Freedom Watch's allegations are insufficient to establish standing.

## A.    Access to Parler Users

Freedom Watch alleges that Apple is "denying FREEDOM WATCH access to and ability to communicate with existing and potential new PARLER users," thereby interfering with Freedom Watch's ability to participate in public debates, disseminate its message, and raise funds. FAC ¶¶ 94, 102.[7]  But Freedom Watch does not allege that it ever even used Apple's App Store to reach Parler users in the first place.  The absence of that allegation alone necessitates dismissal of Freedom Watch's claims against Apple because a plaintiff does not have standing to complain about changes to products or services that the plaintiff does not use.  *See, e.g.*, *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015); *Potter v. Potnetwork Holdings,*

---

[7]  Much of Freedom Watch's Complaint depends on injuries allegedly suffered by *Parler*—a non-party whose alleged injuries cannot form the basis of claims asserted by *Freedom Watch*.  *See, e.g.*, FAC ¶ 26 ("The result for *PARLER* has indeed been devastating and seriously threatens its future survival." (emphasis added)); *id.* ¶ 27 ("*PARLER* has also been harmed, and its survival as a free speech oriented social networking platform is still in grave jeopardy." (emphasis added)); *id.* ¶ 36 (Parler "will continue to be severely injured").

*Inc.*, No. 19-24017-Civ, 2020 WL 1516518, at *2-3 (S.D. Fla. Mar. 30, 2020); *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1219-20 (S.D. Fla. 2018).

Even assuming that Freedom Watch had used an app from Apple's App Store to reach Parler users (or at least alleged as much), Freedom Watch still has failed to identify a cognizable injury for standing purposes because Freedom Watch does not allege that Apple somehow prevented Freedom Watch (or any other user for that matter) from accessing Parler users through *other* distribution channels, including through the open Internet simply by going to Parler's website. Indeed, Freedom Watch concedes that Parler users can "migrate to other online social networking platforms which are available on the Internet." FAC ¶ 36. Thus, the most that Freedom Watch can be said to have alleged here is that Apple stopped carrying the Parler app *in the App Store*—not that Apple has blocked access to Parler (or its users) altogether. As such, Freedom Watch has not alleged an actual injury that is causally connected to anything Apple has done or is likely to be redressed by the relief sought.

In the brick-and-mortar world, this would be like a department store choosing no longer to stock its shelves with a particular product that it deemed unsafe for its customers; however, that product still could be stocked at other stores or made available online, where customers could continue to access it, and customers who already bought the product (before it was removed) could keep it. These distinctions undermine the purported injuries on which Freedom Watch relies to establish standing: even assuming that Freedom Watch was a customer of the App Store (a fact that Freedom Watch does not allege), Apple cannot be said to have denied Freedom Watch access to and ability to communicate with existing and potential new Parler users where Apple is not alleged to have done anything other than remove Parler's app from one of multiple distribution channels for new users. *Id.* ¶¶ 94, 102.

Even with respect to that one distribution channel (the App Store), Freedom Watch acknowledges (as it must) that Apple did *not* discontinue Parler users' access to the Parler app via Apple products where those users downloaded the app *before* it was removed from the App Store on January 9, 2021.  *See id.* ¶¶ 33, 37.  In other words, if a user downloaded the Parler app from the App Store to her iPhone prior to January 9, 2021, the user continues to have access to that app—it is not as though Apple took it away (or is alleged to have done so).  This admission is fatal to Freedom Watch's claims against Apple.  If Freedom Watch downloaded the Parler app from the App Store before it was removed, then Freedom Watch still has access to the Parler app and cannot claim to have been denied access to it by Apple.  If, on the other hand, Freedom Watch did not download the Parler app before it was removed from the App Store, then Freedom Watch cannot claim harm from the removal of an app that Freedom Watch never used on Apple products in the first place.  Notably, Freedom Watch does not allege whether it ever downloaded the Parler app from the App Store, much less when it did so.

### B.     Supracompetitive Prices for Advertising

Freedom Watch alleges that, by "hindering PARLER as a growing new entrant in the microblogging services and social networking markets," Apple is "enabl[ing] competing social networking platforms such as TWITTER and Facebook to charge and maintain supracompetitive prices for advertising on their platforms," which "injures FREEDOM WATCH as an advertising purchaser on social media sites."  FAC ¶¶ 95, 103.  These allegations plainly are insufficient to establish a cognizable injury for standing purposes.

Freedom Watch does not explain in any detail what the "microblogging services and social networking markets" are.  Freedom Watch does not allege with any degree of specificity that it has purchased (or even intends to purchase) advertising through Parler or its purported

competitors.[8]  Freedom Watch offers nothing aside from speculation that Apple's decision to remove the Parler app from the App Store might someday have some impact on advertising prices charged by some actors, and that might have some effect on Freedom Watch.  Freedom Watch's allegation of injury is too threadbare—and not sufficiently concrete and particularized—to establish standing.  *See Ashcroft v.Iqbal*, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) (rejecting plaintiffs' theory that they had been injured by price inflation as too speculative to establish standing).  It also is far too conjectural, as it would require an unsubstantiated leap from (a) Apple's decision to remove the Parler app from the App Store to (b) some unspecified impact on some undefined market to (c) Freedom Watch's unspecified decision to purchase advertising from some unidentified seller at some unidentified future time.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting a theory of injury that "relie[d] on a highly attenuated chain of possibilities"); *accord Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339, 1342-44 (11th Cir. 2021).

## II.     Freedom Watch Fails to State a Claim Against Apple for Intentional Interference with a Business Relationship or a Contract.

To state a claim for intentional interference with a business relationship under Florida law, a plaintiff must allege: "1) the existence of a business relationship under which the plaintiff has legal rights; 2) knowledge of that relationship by the defendant; 3) an intentional and unjustified interference with the relationship; and 4) damage to the plaintiff as a result."  *Illoominate Media,*

---

[8]  The most Freedom Watch says on this point is that it is "an advertising purchaser on social media sites."  FAC ¶¶ 95, 103.  Freedom Watch does not say what these "social media sites" are, whether they are part of the "microblogging services and social networking markets," or whether they include Parler or its competitors.

*Inc. v. CAIR Fla., Inc.*, No. 19-14741, --- F. App'x ----, 2020 WL 7703141, at *3 (11th Cir. Dec. 29, 2020) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).[9] The elements of a claim for intentional interference with contract are essentially the same as those for intentional interference with a business relationship; the "only practical difference is that in the former there is a contract and in the latter only a business relationship." *Pilkington v. United Airlines, Inc.*, 921 F. Supp. 740, 749 (M.D. Fla. 1996), *aff'd*, 112 F.3d 1532 (11th Cir. 1997); *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976); *see also Mariscotti v. Merco Grp. at Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005). As explained next, Freedom Watch has failed to plead the elements of its claims against Apple.

### A.     Existence of a Business Relationship or Contract

#### 1.     Contract

It is axiomatic that, to state a claim for intentional interference with a contract, the plaintiff must at least identify the contract that forms the basis of the claim. Freedom Watch has failed to do that here. Freedom Watch alleges that Parler "had more than 12 million users under contract" and that Apple "interfered with PARLER's performance of its contracts with its users." FAC ¶¶ 100-01. However, noticeably absent from Freedom Watch's Complaint is any allegation that *Freedom Watch* was a party to any contract with Parler, much less when it entered into any such contract or what any such contract purportedly says or how any such contract was caused to be breached by anything Apple did. *See Armstrong Bank v. Shraiberg, Landau & Page, P.A (In re Tuscany Energy, LLC)*, 581 B.R. 681, 691 (Bankr. S.D. Fla. 2018) (quoting *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397-98 (Fla. 1st DCA 1992)) (to constitute intentional interference with

---

[9] For purposes of this Motion, Apple assumes, without taking a position or waiving any rights, that Florida law applies.

a contract, the defendant's act must have "caused a default under the agreement").  Without knowing anything about the contract on which Freedom Watch purportedly relies for its Sixth Cause of Action—*including whether it even exists*—it is impossible to discern what provisions of the contract were the subject of Apple's alleged interference.  Freedom Watch's claim for intentional interference with contract must be dismissed as a result.

## 2. Business Relationship

In the absence of a contract, a plaintiff can claim intentional interference with a business relationship where the plaintiff alleges that it has existing or prospective legal rights under the relationship and that an understanding between the parties would have been completed had the defendant not interfered.  *See Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (citing *Landry v. Hornstein*, 462 So. 2d 844, 846 (Fla. 3d DCA 1985)).  Freedom Watch has not alleged any such relationship here.  The closest it comes is its allegation, made on information and belief, that Parler "had a business relationship with more than 12 million users." FAC ¶ 91.  That legal conclusion, couched as a factual allegation, is insufficient to sustain a claim for intentional interference.  Freedom Watch does not even specifically allege that *it* had a "business relationship" with Parler (or other Parler users, for that matter).  It is entirely unclear from the Complaint what "business relationship" Freedom Watch purports to have and with whom, the nature of that relationship, or what rights Freedom Watch claims to have by virtue of that relationship.

The Eleventh Circuit's recent decision in *Illoominate Media, Inc. v. CAIR Florida, Inc*. is dispositive.  There, Laura Loomer and her company, Illoominate Media, Inc. (collectively "Loomer"), alleged that a civil rights group had conspired with Twitter to ban Loomer from

Twitter.  2020 WL 7703141, at *1.[10]  The Eleventh Circuit affirmed the district court's dismissal of Loomer's claim for intentional interference with a business relationship, explaining that "Loomer's relationship with her Twitter followers is a relationship with the public at large," and "no matter how economically beneficial that relationship might be, no cause of action exists for interference with Loomer's relationship with the general public."  2020 WL 7703141, at *4 (citing *Ethan Allen*, 647 So. 2d at 815).  With respect to Loomer's claim that the defendant interfered with Loomer's relationship with Twitter itself, the Eleventh Circuit explained that "the plaintiffs' amended complaint is devoid of allegations suggesting that Loomer had legal or contractual rights in her Twitter account," and "[i]n fact, Twitter's Terms of Service, which the plaintiffs do not dispute, allow Twitter to ban Loomer from its platform for any reason at all," so even if the defendant had "instructed Twitter to ban her account, it did not tortiously interfere with a business relationship because Loomer did not have legal or contractual rights in the continued use of her account."  *Id*.

Here, too, Parler's purported "business relationship with more than 12 million users," FAC ¶ 91—the only "business relationship" that is referenced in the Complaint—is a relationship between *Parler* and the general public and therefore is not actionable.[11]  Insofar as Freedom Watch intended to allege that Apple interfered with *Freedom Watch's* relationship with Parler users, that too would be a relationship with the general public, and not actionable under *Illoominate Media*

---

[10] Based on its allegations, Freedom Watch must concede that Twitter and Parler are indistinguishable for purposes of this legal analysis.  *Compare* FAC ¶ 15 *with id*. ¶ 17 (describing both Twitter and Parler as microblogging and social networking sites); *id.* ¶ 18 (alleging that "both provide a similar platform").

[11] Even if it were actionable, this would be *Parler's* claim to assert, not Freedom Watch's, because it is *Parler* that is alleged to have a "business relationship with more than 12 million users."  FAC ¶ 91.  Freedom Watch says that it does not know how many followers it has on Parler.  *See id*. ¶ 35.

*Inc.* And insofar as Freedom Watch intended to allege that Apple interfered with Freedom Watch's relationship with Parler itself, that claim would fail for the same reason as Loomer's: the Complaint is devoid of allegations suggesting that Freedom Watch had legal or contractual rights arising from a relationship with Parler, and it acknowledges that Apple placed conditions on apps in the App Store, thereby allowing Apple to remove non-compliant apps. Thus, Freedom Watch's intentional interference claim fails no matter how one slices it.

### B.    Apple's Knowledge of the Relationship or Contract

Of course, Apple could not have knowledge of a business relationship or contract that does not exist. But even assuming that Freedom Watch had identified an actionable business relationship or contract, Freedom Watch fails to allege that Apple knew of that relationship or contract. Freedom Watch says nothing at all about Apple's purported knowledge of any contracts to which Freedom Watch was a party. With respect to business relationships, the most Freedom Watch says is that Apple "knew of PARLER'S relationship with its users." FAC ¶ 92. That is a legal conclusion, and it is irrelevant. Even if it were true that Apple knew that Parler had "users," it does not follow, and Freedom Watch fails to allege, that Apple knew that *Freedom Watch* was one of them. Thus, even if Freedom Watch had alleged the existence of an actionable contract or business relationship (which Freedom Watch has failed to do), Freedom Watch has not sufficiently alleged that Apple had the requisite knowledge of such contract or relationship.

### C.    Intentional and Unjustified Interference

Freedom Watch has not sufficiently alleged, as it must to survive a motion to dismiss, that Apple intentionally and unjustifiably interfered with any business relationship or contract to which Freedom Watch was a party. "Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest." *Sec. Title Guarantee Corp. of Balt. v. McDill*

*Columbus Corp.*, 543 So. 2d 852, 855 (Fla. 2d DCA 1989) (quoting *Deane v. Johnston*, 104 So. 2d 3, 8 (Fla. 1958)).   In other words, the defendant must have manifested the tortious intent to interfere with the plaintiff's business relationship or contract.  *See id.*  "[C]onduct that has only indirect consequences on the plaintiff will not support a claim of tortious interference."  *Astro Tel, Inc. v. Verizon Fla.*, *LLC*, 979 F. Supp. 2d 1284, 1297 (M.D. Fla. 2013) (quotation marks omitted). So "long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are not actionable" in a tortious interference claim because they are deemed to be justified.  *Metzler v. Bear Auto. Serv. Equip. Co*., 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) (citing *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980)); *see also Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1280–81 (11th Cir. 2015) ("[W]hen plaintiffs have failed to adequately allege improper methods, we have followed the Florida courts and dismissed these claims.").

For essentially the same reason that Freedom Watch fails to allege the element of knowledge, it also fails to allege the element of intentionality.  Freedom Watch has not and cannot allege that Apple removed Parler from the App Store with the intent of interfering with any contract or business relationship to which Freedom Watch was a party, particularly where Freedom Watch has not even alleged the existence of such contracts or relationships or that Apple knew about them.  At most, Freedom Watch has alleged that it has suffered indirect consequences from Apple's decision to remove the Parler app from the App Store (although, as explained above, even those allegations are insufficient to set forth a cognizable injury).  That is not enough to support a claim for intentional interference.

In addition, as Freedom Watch appears to acknowledge, Apple's decision to remove the Parler app from the App Store was justified because Apple "requires, as a condition of distribution

through its App Store, that apps which display user-generated content online, such as the one created by Parler LLC, have (and implement) moderation and enforcement policies that remove certain purportedly objectionable content, such as posts that incite violence." FAC ¶ 10. The fact that Apple was entitled to remove the Parler app from the App Store defeats Freedom Watch's intentional interference claims, which rest on Apple doing precisely what it was entitled to do. *See Illoominate*, 2020 WL 7703141, at *4 (dismissing claim where "Twitter's Terms of Service, which plaintiffs do not dispute, allow Twitter to ban Loomer from its platform for any reason at all"); *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987) (there is no "cause of action for tortious interference when a contract provision expressly reserve[s] the right to interfere"); *accord Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339-40 (S.D. Fla. 2007) (citing Florida cases). Thus, taking the Complaint's description of Apple's App Store conditions as true, Apple reserved the right to remove Parler from the App Store, and its decision to exercise that right cannot be the basis for a claim of intentional interference.[12]

### D. Damages

Finally, for the same reasons that it failed to allege a cognizable injury for standing purposes, *supra* § I, Freedom Watch has failed to allege damages. Freedom Watch's damages claim is predicated on the notion that Freedom Watch no longer has access to Parler or Parler's users because of actions taken by Apple. But Freedom Watch does not allege that it ever accessed

---

[12] Freedom Watch makes sweeping assertions, unsupported by facts, that Apple had "animus" toward Parler, its users, and President Trump. *See* FAC ¶¶ 32, 93. Not only are these legal conclusions couched as factual allegations, they actually *undermine* Freedom Watch's legal theory: if it were true, as Freedom Watch alleges, that Apple removed Parler from the App Store because Apple wanted to stop President Trump from moving from Twitter to Parler, *see id.* ¶ 31, that allegation would undermine the inference that Apple's decision to remove Parler from the App Store had anything to do with *Freedom Watch*.

Parler (or its users) via the App Store in the first place or that Apple has done anything to prevent Freedom Watch from accessing Parler (or its users) through other channels.

### III.   Apple Is Immune from Suit Under Section 230 of the Communications Decency Act.

Apple is immune from this suit under Section 230 of the Communications Decency Act, which states in relevant part:  "No provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable."  47 U.S.C. § 230(c)(2).  As both the Eleventh Circuit and the Florida Supreme Court have recognized, the Communications Decency Act "expressly bars any actions under Florida law that conflict with it."  *Dowbenko v. Google Inc.*, 582 F. App'x 801, 804 (11th Cir. 2014) (internal quotation marks omitted) (quoting *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1018 (Fla. 2001)).  That includes claims for tortious interference, which "have been held to be preempted by Section 230."  *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).[13]

First, Apple is a "provider" of "an interactive computer service," which Section 230 defines as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(c)(2), (f)(2).  An "access software provider" is a "*provider of software*" or "enabling tools" that, among other things, "transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content."  *Id.* § 230(f)(4) (emphasis added).  Freedom Watch describes Apple as a technology company that

---

[13] Internet services may invoke Section 230 immunity as grounds for dismissal under Rule 12(b)(6). *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019) (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014)); *see also e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016).

"sells consumer electronics, *computer software*, and *online services*," and it specifically alleges that Apple's "online services include the iOS App Store and the Mac App Store, where customers can obtain and download a wide variety of *software programs* ('apps'), such as social networking platform apps, which are compatible with *APPLE's operating system software*."   FAC ¶ 8 (emphasis added).   The allegations in the Complaint therefore establish that Apple is a provider of interactive computer services within the meaning of Section 230.

Second, as a provider of an interactive computer service, Apple is immune from liability for its actions "voluntarily taken in good faith to restrict access to or availability of . . . excessively violent, harassing, or otherwise objectionable" material.   47 U.S.C. § 230(c)(2)(A).   In its Complaint, Freedom Watch acknowledges that Apple's stated reason for removing Parler from the App Store was Parler's failure to moderate dangerous content on its platform.   *See* FAC ¶¶ 31-32. Apple therefore is entitled to immunity under the Communications Decency Act.

Freedom Watch alleges that Apple's stated reason for removing the Parler app from the App Store was "pretextual" and was based on "animus," as evident from Apple's allegedly "disparate treatment of Parler and Twitter," where Apple removed the Parler app from the App Store but not the Twitter app (which had suspended President Trump's account).   FAC ¶ 32; *see also* FAC ¶ 21.   Even if those legal conclusions couched as factual allegations were afforded weight, they are insufficient to survive a motion to dismiss under Section 230.   If a plaintiff could avoid Section 230 immunity simply by pleading that a defendant removed some, but not all, offensive content, and therefore acted in bad faith, then the statute would be rendered inoperative and its purposes defeated.

As the Second Circuit recently explained in affirming a motion to dismiss in analogous circumstances,[14] Section 230 does not "mandate perfect enforcement of a platform's content policies," as "one purpose of Section 230 is to provide interactive computer services with immunity for removing 'some—but not all—offensive material from their websites.'" *Domen v. Vimeo, Inc.*, No. 20-616, --- F.3d ----, 2021 WL 922749, at *1, *4 (2d Cir. Mar. 11, 2021) (quoting *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018)). "Given the massive amount of user-generated content available on interactive platforms, imperfect exercise of content-policing discretion does not, without more, suggest that enforcement of content policies was not done in good faith." *Id.* at *4 (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)). To hold otherwise would undermine "the fundamental purpose of Section 230(c)(2)," which is to provide platforms "the discretion to identify and remove what they consider objectionable content from their platforms without incurring liability for each decision." *Id.* at *1. Where, as here, the defendant's action was "a straightforward consequence of [its] content policies," *id.* at *4, dismissal is required under Section 230.

Even if the law required perfect and uniform enforcement of content policies (which it does not), Freedom Watch's allegations still would fail to state a claim under Section 230. While Freedom Watch alleges that similarly offensive *content* could be found on both Parler and Twitter, *see* FAC ¶ 41, Freedom Watch does *not* allege that Parler and Twitter had similar *policies for identifying and removing such content*—even though Freedom Watch acknowledges that Apple's

---

[14] In *Domen v. Vimeo, Inc.*, the defendant Vimeo had removed the plaintiff Church United's account from Vimeo's video streaming platform because the plaintiff had violated Vimeo's policies against harassing or otherwise objectionable speech. No. 20-616, --- F.3d ----, 2021 WL 922749, at *2 (2d Cir. Mar. 11, 2021). Church United alleged that Vimeo had removed Church United's account in bad faith, as evidenced by the fact that Vimeo allowed similar videos to remain on Vimeo's platform. *Id.* The Second Circuit affirmed dismissal under Section 230.

reason for removing the Parler app from the App Store was Parler's lack of an adequate "moderation improvement plan that would remove allegedly objectionable content." FAC ¶ 31; *see also id*. ¶ 32. In other words, the issue here is not whether both Twitter and Parler hosted offensive content (which Freedom Watch alleges to be the case), it is rather whether both Twitter and Parler had sufficient policies in place to identify and remove such content (an issue about which the Complaint is silent except to acknowledge it as Apple's stated reason for removing the Parler app from the App Store).

## IV.   Alternatively, Freedom Watch's Complaint Should Be Dismissed on Forum Non Conveniens Grounds.

If Freedom Watch used Apple's App Store to access the Parler app, then Freedom Watch agreed to Apple's Media Services Terms of Service, which require Freedom Watch to "submit to the personal and exclusive jurisdiction of the courts located within the county of Santa Clara, California, to resolve any dispute or claim" against Apple. Ex. A, Apple Media Services Terms and Conditions 9, 13. Forum selection clauses are appropriately enforced through the forum non conveniens doctrine and should be given controlling weight except in extraordinary circumstances, which do not exist here. *See Atl. Mar. Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 63 (2013). If the Court were to deny Apple's motion to dismiss for lack of standing, failure to state a claim, or Section 230 immunity (*i.e.*, if the Court were to reject the arguments set forth in Sections I through III above) or if the Court were to grant Freedom Watch's motion to remand, then Apple respectfully would request that the Court instead dismiss the claims against Apple under the doctrine of forum non conveniens.[15]

---

[15] In that situation, dismissing the claims against Apple would be more appropriate than severing and transferring the case because the Complaint involves multiple claims against multiple defendants. *See Apex Toxicology, LLC v. United Healthcare Servs., Inc.*, Case No. 17-61840-CIV, 2020 WL 2932953, at *1-2 (S.D. Fla. May 14, 2020); *Hisey v. Qualtek USA, LLC*, 753 F. App'x

## **CONCLUSION**

For the foregoing reasons, Apple respectfully requests that this Court grant this Motion and dismiss Counts Five and Six of Freedom Watch's Complaint.

Dated: April 5, 2021                                Respectfully submitted,

                                **   Alec H. Schultz           **
                                **Alec Schultz**
                                HILGERS GRABEN PLLC(FL Bar 35022)
                                1221 Brickell Avenue
                                Miami, FL 33131
                                Telephone: 305-630-8304
                                aschultz@hilgersgraben.com

                                **Kali Bracey** (DC Bar 458965)*
                                **Joshua Riley** (DC Bar 1026900)*
                                JENNER & BLOCK LLP
                                1099 New York Avenue NW
                                Washington, DC 20001
                                Telephone: 202-639-6000
                                Fax: 202-639-6066
                                kbracey@jenner.com
                                jpriley@jenner.com

                                *Attorneys for Apple*

                                *\*Admitted pro hac vice*

---

698, 704 (11th Cir. 2018) (affirming district court's decision to dismiss, rather than transfer, a case on forum non conveniens grounds).

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2021, a true and correct copy of the foregoing Motion to Dismiss and Incorporated Memorandum of Law was electronically filed with the Clerk using the CM/ECF filing system and served upon all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner.


                           ____/s/ Alec Schultz_____
                           *Counsel for Apple*