UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:21-cv-80515-DMM

| | |
|---|---|
| FREEDOM WATCH, INC., | ) ) ) |
| Plaintiff, | ) [Removed From: ) Circuit Court of the Fifteenth Judicial ) Circuit in and for Palm Beach County, |
| - against - | ) Florida ) |
| AMAZON WEB SERVICES INC., APPLE INC., and GOOGLE LLC, | ) Case No.: 50-2021-CA-000884] ) ) |
| Defendants. | ) ) |

## MOTION OF DEFENDANT AMAZON WEB SERVICES, INC. TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

GELBER SCHACHTER & GREENBERG, P.A.
Brian W. Toth (Florida Bar No. 57708)
Natalia B. McGinn (Florida Bar No. 1011385)
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Phone: (305) 728-0965
btoth@gsgpa.com
nmcginn@gsgpa.com

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
1301 K Street, N.W., Suite 500 East
Washington, DC 20005
Phone: (202) 973-4200

Alonzo Wickers IV (*pro hac vice*)
Cydney Swofford Freeman (*pro hac vice*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: 213-633-6800

Ambika Kumar Doran (*pro hac vice*)
Caesar Kalinowski IV (*pro hac vice*)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150

*Counsel for Defendant Amazon Web Services, Inc.*

4814-2071-6002v.2 0051461-003608

# TABLE OF CONTENTS

**Page #**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

    A. AWS Suspends Parler's Account for Violations of the Parties' Agreement ........... 2

    B. Parler's Terms of Service for Parler Users .............................................................. 3

    C. This Lawsuit .............................................................................................................. 5

III. STANDARD OF REVIEW .................................................................................................. 6

IV. FREEDOM WATCH FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR CONTRACT ................. 7

V. SECTION 230 BARS PLAINTIFF'S CLAIMS AGAINST AWS ................................... 11

VI. CONCLUSION ................................................................................................................... 12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ...............................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................................6

*Dipp-Paz v. Facebook*,
    2019 WL 3205842 (S.D.N.Y. July 12, 2019) ..........................................................................11

*Domen v. Vimeo, Inc.*,
    --- F.3d ----, 2021 WL 922749 (2d Cir. Mar. 11, 2021) ..........................................................11

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
    647 So. 2d 812 (Fla. 1994) ...................................................................................................7, 10

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................11

*Freedom Watch, Inc. v. Google*,
    368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020),
    *petition for cert. filed* (U.S. Jan. 2, 2021) .................................................................................5

*Illoominate Media, Inc. v. CAIR Fla., Inc.*,
    --- F. App'x ---, 2020 WL 7703141 (11th Cir. Dec. 29, 2020) ....................................... passim

*In re Physician Corp. of Am. Secs. Litig.*,
    50 F. Supp. 2d 1304 (S.D. Fla. 1999) (Middlebrooks, J.) .........................................................2

*KMS Rest. Corp. v. Wendy's Int'l*,
    361 F.3d 1321 (11th Cir. 2004) .................................................................................................8

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) .................................................................................................6

*Mezey v. Twitter, Inc.*,
    2018 WL 5306769 (S.D. Fla. July 19, 2018) ...........................................................................11

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
    158 Wash. 2d 342 (2006) (en banc) ..........................................................................................7

*Parler LLC v. Amazon Web Servs.*,
 No. 2:21-cv-0031-BJR, 2021 WL 210721 (W.D. Wash. Jan. 21, 2021) ........................... 1, 2, 3

*Plain Bay Sales v. Gallaher*,
 2019 WL 6206836 (S.D. Fla. Nov. 21, 2019) ............................................................................ 8

*Riggs v. MySpace, Inc.*,
 444 F. App'x 986 (9th Cir. 2011) .............................................................................................. 11

*St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs.*,
 784 So. 2d 500 (Fla. 5th Dist. App. 2001) ................................................................................ 10

*Tyntec Inc. v. Syniverse Techs., LLC*,
 2019 WL 9829361 (M.D. Fla. Aug. 19, 2019), *R. & R. adopted*, 2020 WL
 2786873 (M.D. Fla. May 29, 2020) ........................................................................................... 7

**Statutes**

47 U.S.C. § 230 ................................................................................................................................ 11

4814-2071-6002v.2 0051461-003608

## I.   INTRODUCTION

Plaintiff Freedom Watch, Inc., a "non-profit political interest group," alleges that Defendant Amazon Web Services, Inc. ("AWS") tortiously interfered with its contracts with existing and prospective users of the Parler social media application when AWS suspended Parler's public facing use of AWS services.  Parler already made and lost a similar claim, with a federal court in Seattle holding that the company failed to demonstrate a likelihood of success on its breach of contract and associated tortious interference claims because Parler, not AWS, had violated the parties' agreement.  *See Parler LLC v. Amazon Web Servs.*, No. 2:21-cv-0031-BJR, 2021 WL 210721, at *4 (W.D. Wash. Jan. 21, 2021).

The complaint of Freedom Watch, a third party, should fare no better, as Freedom Watch has failed to allege a cognizable claim under Rule 12(b)(6).  In particular, Freedom Watch has not alleged, as it must, that it has a protectable business relationship or contract to which it is a party.  Indeed, the First Amended Complaint ("FAC") is not even clear about which relationship AWS allegedly interfered with.  To the extent Freedom Watch claims AWS interfered with Parler's relationship with Parler's own users, Freedom Watch lacks standing to do so.  To the extent Freedom Watch claims that AWS interfered with Freedom Watch's relationship with Parler or Parler's users, the Eleventh Circuit rejected nearly identical claims just a few months ago, affirming dismissal of a plaintiff's claims that the defendant interfered with her relationships with Twitter and with Twitter users by causing Twitter to terminate her account.  *Illoominate Media, Inc. v. CAIR Fla., Inc.*, --- F. App'x ---, 2020 WL 7703141, at *4 (11th Cir. Dec. 29, 2020).

AWS respectfully requests that this Court dismiss Freedom Watch's claims against AWS, and, because no amendment could cure the defect, dismiss this case with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     AWS Suspends Parler's Account for Violations of the Parties' Agreement

Parler is a social media service that prides itself on its "laissez faire or 'reactive'" approach to moderating user content. *See Parler*, 2021 WL 210721, at *1; FAC ¶ 15 (Parler "provide[s] an uncensored forum"). In June 2018, Parler signed up to be a customer of AWS, which provides hosting and cloud computing services for businesses, nonprofits, and government organizations globally. *See* FAC ¶ 16. Parler accepted the terms of the AWS Customer Agreement (the "Agreement") and AWS's Acceptable Use Policy ("AUP"), which Freedom Watch has incorporated by reference in its complaint.[1] Declaration of Laura Handman, Exs. A-B.

The Agreement requires that Parler "ensure that Your Content and your and End Users' use of Your Content or the Service Offerings will not violate any of the Policies or any applicable law," and makes clear that Parler is "solely responsible for the development, content, operation, maintenance, and use of" the material on its service. Ex. A § 4.2; *see also id.* § 4.5 ("You will ensure that all End Users comply with your obligations under this Agreement . . . ."). The Agreement also requires Parler to "immediately suspend access" to content that it learns violates its

---

[1] Under this doctrine, "'[w]here the plaintiff has referred to certain documents in the complaint that are 'central to [its] claim,' the Court 'may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require the conversion of the motion into a motion for summary judgment.'" *In re Physician Corp. of Am. Secs. Litig.*, 50 F. Supp. 2d 1304, 1312 (S.D. Fla. 1999) (Middlebrooks, J.) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). This Court may consider the Agreement and AUP because they are "central" to Freedom Watch's claims. *See, e.g.*, FAC ¶ 16 ("PARLER contracted with AWS to provide the cloud computing/web hosting services PARLER needed for its apps and website to function on the Internet."); *id.* ¶¶ 44-45 ("AWS's malicious and pretextual shutdown of PARLER wrongfully interfered with FREEDOM WATCH's freedom of expression" and "deprived Plaintiff FREEDOM WATCH of access to and ability to communicate with existing and potential new PARLER users"). *See also id.* ¶¶ 16, 24, 26, 36, 38-40, 42-48.

obligations under the Agreement, and states that AWS may suspend or terminate an account "immediately" upon notice if AWS determines that an end user's use of the services "poses a security risk to the Service Offerings or any third party" or otherwise breaches the Agreement. *Id.* §§ 4.5, 6.1(a)-(b) (suspension); *id.* § 7.2(b) (termination). *See also Parler*, 2021 WL 210721, at *4 (finding that the Agreement "gives AWS the right either to suspend or to terminate, immediately upon notice, in the event Parler is in breach").

Beginning in late 2020, AWS "repeatedly communicated with Parler" regarding its concerns about third-party content that violated the Agreement and AUP, to which Parler had failed to respond in a "timely or adequate manner." *Parler*, 2021 WL 210721, at *2. In related litigation in the Western District in Washington, Parler did not deny that the posts violated the AUP. *Id.*

These events came to a head on January 6, 2021, the day individuals stormed the Capitol to protest the presidential election results. Three days later, in the wake of ongoing conversations between AWS and Parler regarding Parler's moderation policies, AWS notified Parler it would suspend its account effective 11:59 p.m. January 10. FAC ¶ 38. *See also Parler*, 2021 WL 210721, at *4 (Parler failed to demonstrate a likelihood of success on its breach of contract claim against AWS because, at the time AWS terminated Parler, Parler had violated the Agreement and AUP).

  **B.**  **Parler's Terms of Service for Parler Users**

Freedom Watch alleges that when AWS suspended Parler's account, Freedom Watch was a Parler user that "had followers." FAC ¶ 35. Parler's November 27, 2020 Terms of Service ("Parler Terms") would have governed its relationships with Parler users at the time of its suspension.[2] Handman Decl., Ex. C § 1 ("This Agreement governs your relationship with Parler and

---

[2] As the only possibly alleged contract between Freedom Watch and Parler, *see infra* Section IV, the Parler Terms, too, are incorporated by reference in and central to Freedom Watch's FAC. *See supra* n.1.

3

your use of and access to all services and products provided by Parler (collectively, the Services). You agree that by accessing or using any part of the Services you are bound by the terms of this Agreement (the Terms)[.]"). The Parler Terms (1) provide users only a revocable ability to post, explicitly allowing Parler to remove any content and terminate users' access to the service "at any time and for any reason," § 9; (2) disavow any representations "about the function of the Services," instead providing that "[t]he Services come with no express or implied warranties" and that "Parler has no responsibility or liability to you arising from … interruption of service, or similar event that may cause you to suffer damage, loss, or injury," § 11; and (3) relieve Parler of all liability for removing content or terminating access, and of liability "FROM THE ACTS OR OMISSIONS OF ANY OTHER PERSON OR THIRD PARTY" based on a variety of legal theories, including but not limited to contract and tort, §§ 9, 11:

> **9. Parler may remove any content and terminate your access to the Services** at any time and for any reason to the extent Parler reasonably believes (a) you have violated these Terms or Parler's Community Guidelines, (b) you create risk or possible legal exposure for Parler, or (c) you are otherwise engaging in unlawful conduct … . Any invitation made by Parler to you to use the Services or submit content to the Services, or the fact that Parler may receive a benefit from your use of the Services or provision of content to the Services, will not obligate Parler to maintain any content or maintain your access to the Services.  Parler will have no liability to you for removing any content, for terminating your access to the Services, or for modifying or terminating the Services.
>
> **11. The Services are provided to you as-is and at your own risk**. The Services come with no express or implied warranties, except those that cannot be disclaimed under the law.
>
> PARLER DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES AND CONDITIONS, SUCH AS MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.  Parler makes no representation or endorsement about the function of the Services or any content available through the Services. … Parler has no responsibility or liability to you arising from … technical malfunction, interruption of service, or similar event that may cause you to suffer damage, loss, or injury, including

4

without limitation any damage to or loss of your personal property, data, operations, information, reputation, goodwill, profits, etc.

… PARLER WILL NOT BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES, OR FOR ANY LOST PROFITS, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR FOR INTANGIBLE LOSSES, ARISING FROM (a) YOUR ACCESS TO OR USE OF (OR INABILITY TO ACCESS OR USE) THE SERVICES; (b) FROM THE ACTS OR OMISSIONS OF ANY OTHER PERSON OR THIRD PARTY[.] … THE LIMITATIONS OF THIS SECTION SHALL APPLY TO ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND SHALL FURTHER APPLY WHETHER OR NOT PARLER HAS BEEN INFORMED OF THE POSSIBLITY OF ANY SUCH DAMAGES AND EVEN IF A REMEDY LAID OUT IN THESE TERMS IS FOUND TO HAVE FAILED ITS ESSENTIAL PURPOSE.

### C. This Lawsuit

Freedom Watch filed its initial complaint in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on January 19, 2021, asserting claims against defendants AWS, Apple, and Google for intentional interference with business relationship and contracts. *See* Compl. ¶¶ 55-71. The complaint sought compensatory and punitive damages and injunctions requiring defendants to reinstate Parler's AWS account and return the Parler app to the Apple and Google app stores. *Id.* at 34-35 (Prayer for Relief).[3] Freedom Watch served AWS on February 16, 2021—the day after Parler's website came back online through another web services provider.[4]

---

[3] This is not the first time Freedom Watch and its counsel have challenged the termination of an account by a social media service. *See Freedom Watch, Inc. v. Google*, 368 F. Supp. 3d 30 (D.D.C. 2019) (granting Google, Facebook, Twitter, and Apple's motions to dismiss Freedom Watch's Sherman Act, D.C. Human Rights Act, and First Amendment claims), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020), *petition for cert. filed* (U.S. Jan. 2, 2021) (No. 20-969).

[4] *See* Parler, https://parler.com; Jack Nicas, *Parler, a Social Network That Attracted Trump Fans, Returns Online*, N.Y. Times (Feb. 15, 2021), http://www.nytimes.com/2021/02/15/technology/parler-back-online.html.

On March 8, 2021, AWS removed the action to federal court on the basis of diversity jurisdiction. Dkt. 1 (Notice of Removal). Freedom Watch filed the FAC on March 20, 2021, alongside a motion to remand the matter to state court. Dkt. 19 (FAC), 20 (Motion to Remand). The FAC strikes the request for punitive damages in an attempt to evade diversity jurisdiction, *see* AWS's concurrently filed Opposition to Plaintiff's Motion to Remand, but otherwise does not materially alter Freedom Watch's allegations against AWS (or Apple or Google).

AWS now moves to dismiss Freedom Watch's claims against AWS.

### III.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept well-pleaded factual allegations as true, it need not accept "[l]egal conclusions without adequate factual support." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). These "[f]actual allegations must be enough to raise a right to relief above the speculative level." Instead, Freedom Watch must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). *See also Twombly*, 550 U.S. at 555 (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Where, as here, a plaintiff has "not nudged [its] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

## IV. FREEDOM WATCH FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR CONTRACT

Under Florida law, the elements of tortious interference with a business relationship or performance of contract are "(1) the existence of a business relationship [or contract][;] (2) knowledge of the relationship [or contract] on the part of the defendant; (3) an intentional and unjustified interference with the relationship [or contract] by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship [or contract]." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).[5] "[T]he alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Id.* (citation omitted). Freedom Watch's FAC fails adequately to allege even the tort's first element.

It is difficult to understand the FAC's precise allegations, as they appear to conflict and allege potentially three different theories. First, the FAC appears to allege that AWS interfered with *Parler's* business relationships and contracts with its users. FAC at 20, 22; *see also id.* ¶ 59 ("Defendant AWS engaged in intentional and unjustified interference with PARLER's relationships with its users."); *id.* ¶ 67 ("Defendant AWS intentionally and improperly interfered with

---

[5] Florida courts use the same analysis for interference with both a business relationship and contract. *See, e.g.*, *Tyntec Inc. v. Syniverse Techs., LLC*, 2019 WL 9829361, at *14 (M.D. Fla. Aug. 19, 2019) ("The only material difference appears to be that in one there is a contract and in the other there is only a business relationship.") (quoting *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976) (the two claims are "basically the same cause of action")), *R. & R. adopted*, 2020 WL 2786873 (M.D. Fla. May 29, 2020).

AWS, headquartered in Washington, assumes Florida law applies solely for the purpose of this motion, and in any event, the laws of the two states are substantively the same. *Compare Ethan Allen*, 647 So.2d at 814 (listing elements of Florida tortious interference claims, summarized above) *with Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 351 (2006) (en banc) (elements of tortious interference with contract or business relationship are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage") (citation omitted).

7

PARLER's performance of its contracts with its users[.]"). Second, the FAC refers to Freedom Watch's contract or relationship with Parler. *See* FAC ¶ 68 ("PARLER's users, including Plaintiff FREEDOM WATCH, have suffered and will continue to suffer pecuniary loss resulting from PARLER's inability to provide them with access to PARLER's social networking platform"). And third, the FAC refers to Freedom Watch's contract or relationship with Parler's users. *See, e.g.*, FAC ¶ 60 (AWS "denied FREEDOM WATCH access to and ability to communicate with existing and potential new PARLER users"). But none of these theories, even if sufficiently pled by the FAC, states a claim upon which relief can be granted.

First, Freedom Watch has no standing to raise a claim of interference with Parler's relationships or contracts with its users other than Freedom Watch. *See Plain Bay Sales v. Gallaher*, 2019 WL 6206836, at *2-3 (S.D. Fla. Nov. 21, 2019) (third party defendants lacked standing to assert tortious interference claim where they were "not parties to [the] agreement" at issue); *see also KMS Rest. Corp. v. Wendy's Int'l*, 361 F.3d 1321, 1324-25 (11th Cir. 2004) (individual lacked standing to assert tortious interference claims where he "has no rights of his own" under the agreements at issue and was not the "proper plaintiff").

Second, Freedom Watch fails to allege it had any protectable business relationship or contract with Parler. The Eleventh Circuit's recent opinion in *Illoominate Media v. CAIR Florida* is instructive. After Twitter banned congressional nominee Laura Loomer from its service, Loomer sued an Islamic civil rights group for tortious interference, alleging that the group conspired with Twitter to ban her account. 2020 WL 7703141, at *1. The court affirmed the district court decision dismissing the complaint with prejudice, stating that "[i]n order to show that CAIR Foundation's supposed instruction to ban Loomer constituted tortious interference with a business relationship, the plaintiffs needed to show that Loomer had 'existing or prospective legal or contractual rights'

8

in the use of her Twitter account." *Id.* at *4 (quoting *Ethan Allen*, 647 So. 2d at 814). Instead, the Court found, the complaint was "devoid of allegations suggesting that Loomer had legal or contractual rights in her Twitter account," and that because Twitter's Terms of Service allowed Twitter to ban Loomer for any reason, the defendant "did not tortiously interfere with a business relationship because Loomer did not have legal or contractual rights in the continued use of her account." *Id.* (citing *Ethan Allen*, 657 So. 2d at 814).

So too, here, Freedom Watch fails to allege that it had any specific or protectable business relationship with Parler. The FAC is devoid of any allegation about Freedom Watch's alleged relationship with Parler beyond that Freedom Watch used Parler for social networking. *E.g.*, *id.* ¶ 36 ("FREEDOM WATCH followers who migrate from PARLER will be lost by FREEDOM WATCH."). Like for Loomer, this omission is fatal to Freedom Watch's claim against AWS for tortious interference with Freedom Watch's business relationship with Parler. *See* 2020 WL 7703141, at *4.

Moreover, the Parler Terms—the only possible contractual relationship alleged between Freedom Watch and Parler, FAC ¶ 66 —make clear that any amendment would be futile. Those terms give Parler the right to terminate a user's access "*at any time and for any reason* to the extent Parler reasonably believes (a) [the user has] violated these Terms or Parler's Community Guidelines, (b) [the user] *create[s] risk* or possible legal exposure for Parler, or (c) [the user is] otherwise engaging in unlawful conduct." Ex. C, Parler Terms § 9 (emphasis added). The terms do "not obligate Parler to maintain any content or maintain [a user's] access to the Services," and state that Parler has "no liability to [a user] for… terminating [a user's] access to the Services, or for modifying or terminating the Services." *Id.* §§ 9, 11. In other words, Freedom Watch has no valid expectation of continued use of Parler. Instead, the Parler Terms make clear that Parler has the

9

right to end a user's access to the platform at any time and without any repercussion. Accordingly, Freedom Watch, like Loomer, clearly cannot plead that it had "legal or contractual rights in [its Parler] account." *Illoominate*, 2020 WL 7703141, at *4.

Finally, to the extent Freedom Watch attempts to plead that AWS interfered with its alleged relationships or contracts with other Parler users (FAC ¶ 60), the claim likewise fails. "[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815 (furniture dealer could not base tortious interference claims on business relationships with past customers absent understanding that they would continue to do business with dealer). *See also St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs.*, 784 So. 2d 500, 505 (Fla. 5th Dist. App. 2001) ("hope of future business is not sufficient to sustain the tort of interference with a business relationship").

Again, *Illoominate* is instructive. There, the Eleventh Circuit held that Loomer had failed to "allege that CAIR Foundation interfered with specific agreements with identifiable customers or donors" but instead that the Foundation "interfered with Loomer's relationship with the general Twitter community." 2020 WL 7703141, at *4. But "no matter how economically beneficial that relationship might be, no cause of action exists for interference with Loomer's relationship with the general public." *Id.* Here, as in *Illoominate*, Freedom Watch generally alleges it was "denied … access to and ability to communicate with existing and potential new PARLER users," and that AWS "wrongfully interfere[d] with the fundraising necessary to support FREEDOM WATCH's effective and robust delivery of its message." FAC ¶ 60. Freedom Watch does not allege *any* contract with other Parler users. Freedom Watch's alleged relationships with Parler users are no

10

more than "a relationship with the public at large," and thus cannot give rise to a claim for tortious interference. *See Illoominate*, 2020 WL 7703141, at *4.

## V. SECTION 230 BARS PLAINTIFF'S CLAIMS AGAINST AWS

The Court need not proceed further, as Freedom Watch's claims fail on their face. But even if the Court finds otherwise, Freedom Watch's interference claims also fail under Section 230(c)(2) of the Communications Decency Act. Under that statute, the provider of an "interactive computer service" is immune as to "'any action voluntarily taken in good faith to restrict access to or availability of material that the provider ... considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting 47 U.S.C. § 230(c)(2)). That is precisely what AWS did here: removed access to content that it considered "excessively violent" and "harassing[.]" 47 U.S.C. § 230(c)(2)(A); FAC ¶ 38 ("AWS stated as the reason for the suspension that AWS was not confident that PARLER could properly police its platform regarding content that encourages or incites violence against others."). Freedom Watch's conclusory assertions to the contrary are insufficient. *See Domen v. Vimeo, Inc.*, --- F.3d ----, 2021 WL 922749, at *4 (2d Cir. Mar. 11, 2021) (plaintiff's allegations that defendant, video-sharing service, "acted in bad faith" by terminating its account but not the accounts of others with similar content, were too "conclusory to survive a motion to dismiss under Rule 12(b)(6)").[6]

---

[6] Freedom Watch's interference claims are also barred by Section 230(c)(1). *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1116-21 (N.D. Cal. 2020) (Section 230 barred claims against Facebook for removing plaintiff's account and page); *Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (Section 230(c)(1) barred claims against Twitter for suspending plaintiff's account). *See also Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles"); *Dipp-Paz v. Facebook*, 2019 WL 3205842, at *3 (S.D.N.Y. July 12, 2019) (Section 230 bars claims arising from suspension of plaintiff's Facebook account).

11

## VI. CONCLUSION

For these reasons, AWS respectfully requests that the Court grant its motion and dismiss all claims against AWS with prejudice.

Dated: April 5, 2021

Respectfully submitted,
*s/Brian W. Toth*
GELBER SCHACHTER & GREENBERG, P.A.
Brian W. Toth (Florida Bar No. 57708)
Natalia B. McGinn (Florida Bar No. 1011385)
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Phone: (305) 728-0965
btoth@gsgpa.com
nmcginn@gsgpa.com

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman (*pro hac vice*)
Meenakshi Krishnan (*pro hac vice*)
1301 K Street, N.W., Suite 500 East
Washington, DC 20005
Phone: (202) 973-4200
laurahandman@dwt.com
meenakshikrishnan@dwt.com

Alonzo Wickers IV (*pro hac vice*)
Cydney Swofford Freeman (*pro hac vice*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: 213-633-6800
alonzowickers@dwt.com
cydneyfreeman@dwt.com

Ambika Kumar Doran (*pro hac vice*)
Caesar Kalinowski IV (*pro hac vice*)
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206-622-3150
ambikadoran@dwt.com
caesarkalinowski@dwt.com

*Counsel for Defendant Amazon Web Services, Inc.*

4814-2071-6002v.2 0051461-003608